**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOSE GAMIZ,<br><br>Plaintiff,<br><br>v.<br><br>SPECIAL AGENT THOMAS SHEEHAN,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 24 CV 6576<br><br>The Honorable<br>Joan H. Lefkow,<br>Judge Presiding. |

**PLAINTIFF'S LOCAL RULE 56.1(b)(2) RESPONSE TO DEFENDANT'S AMENDED STATEMENT OF UNDISPUTED MATERIAL FACTS AND PLAINTIFF'S LOCAL RULE 56.1(b)(3) STATEMENT OF ADDITIONAL UNDISPUTED FACTS**

NOW COMES the Plaintiff, Jose GAMIZ, by and through his attorney, Jonathan D. Feldman, and pursuant to Local Rule 56.1(b)(2) of the Northern District of Illinois, hereby submits his response to Defendant's Amended Statement of Undisputed Material Facts (Dkt. No. 57) as to which there is a genuine issue of fact and his Local Rule 56.1(b)(3) Statement of Additional Undisputed Material Facts as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. On July 29, 2024, Jose Gamiz (hereinafter "Plaintiff") initiated this lawsuit by filing a complaint against Special Agent Thomas Sheehan and the Illinois State Police. (Pl.'s Compl., Dkt. No. 1)

**Response:** Plaintiff does not dispute paragraph 1.

2. On October 21, 2024, Plaintiff filed an amended complaint, removing Illinois State Police as a Defendant. In the amended complaint, Plaintiff alleges that the Special

Agent Sheehan violated his civil rights by arresting him on May 8, 2023. (Pl. Am.Comp., Dkt. No. 11) More specifically, Plaintiff brings claims against Special Agent Sheehan under 42 U.S.C. § 1983 (hereinafter "section 1983") for false arrest, illegal detention, and malicious prosecution under Illinois law. (*Id.*)

**Response:** Plaintiff does not dispute paragraph 2.

3. This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343 and supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b). (*Id.* ¶¶ 2-3)

**Response:** Plaintiff does not dispute paragraph 3.

4. At all times relevant herein, Defendant Thomas Sheehan was an Illinois State Police Special Agent and the actions that form the basis of Plaintiff's Amended Complaint were taken under color of law and within the course and scope of his employment as an Illinois State Police Special Agent. (*Id.* ¶ 6)

**Response:** Plaintiff does not dispute paragraph 4.

**Initial Incident**

5. On March 28, 2023, a two-car collision occurred at or about 3:40 p.m. Central Standard Time near northbound I-55 at County Line Road, Burr Ridge, Illinois between a vehicle driven by Plaintiff and another vehicle driven by Mercedes Rodriguez resulting in both vehicles coming to a stop in the center of the expressway in a T-formation. (*Id.* ¶ 8). (Ex. A-Dep of J. Gamiz at 14:12-18)

**Response:** Plaintiff does not dispute paragraph 5.

**Second incident**

6. Mercedes Rodriguez exits her vehicle and stands in front of Plaintiff's vehicle at which point the Plaintiff's vehicle is seen quickly moving forward and striking Mercedes Rodriguez pushing her into the rear tires of a passing semi-truck. (Ex. A-Dep of J. Gamiz at 31:8-20; 47:12-15), (Ex. C-Dep of Tr. Sterling at 80:1-9), (Ex. B-Dep of S.A. Sheehan at 68:12-69:1; 80:19-81:13)

**Response:** Plaintiff objects to paragraph 6. There is no evidence that Plaintiff's vehicle was "quickly moving forward." Trooper Stirling and Special Agent Sheehan both indicated that the video showed Plaintiff's vehicle going forward and making contact with the female that was standing in front of Plaintiff's vehicle. (Def. Ex. C, Trooper Sterling Dep. at 80:1-9) (Def. Ex. B, Special Agent Sheehan Dep. at 81:2-8) Christopher Weinbrenner determined that "the movement of the vehicle began at approximately -0.6 seconds (2.0 mph)." (Def. Ex. I, Weinbrenner Report at page 7)

7. Plaintiff's vehicle came to a stop after striking the passing semi-truck and Mercedes Rodriguez was left severely injured and bleeding in the center of the expressway. (Ex. B-Dep of S.A. Sheehan at 82:25-83:2) (Ex. C-Dep of Tr. Sterling at 22:20-23:5)

**Response:** Plaintiff does not dispute paragraph 7.

8. Illinois State Trooper Howard Sterling responded to the scene and interviewed the Plaintiff who stated that his vehicle and Mercedes Rodriguez were both struck by the

semi-truck. (Ex. C-Dep of Tr. Sterling at 79:18-21), (Ex. B-Dep of S.A. Sheehan at 80:5-18)

**Response:** Plaintiff does not dispute paragraph 8.

**<u>Special Agent Sheehan is Assigned</u>**

9. A few days after the incident and injuries to Mercedes Rodriguez, Special Agent Sheehan was assigned to investigate the matter. (Ex. B-Dep of S.A. Sheehan at 21:25-4)

**Response:** Plaintiff does not dispute paragraph 9.

10. His investigation lasted weeks and included reviewing the reports from the scene, video evidence, body-camera footage, seeking a search warrant for crash data from Plaintiff's vehicle, gathering video evidence. (Ex. B-Dep of S.A. Sheehan at 80:19-81:13)

**Response:** Plaintiff does not dispute paragraph 10.

11. Contrary to Plaintiff's statements at the scene, dash-camera footage from the involved semi-truck showed Plaintiff's vehicle accelerating forward, striking Mercedes Rodriguez and the back of the trailer. (Ex. A-Dep of J. Gamiz at 16, 47), (Ex. B-Dep of S.A. Sheehan at 68:1-69:1), (Ex. C-Dep of Tr. Sterling at 80:1-9)

**Response:** Plaintiff objects to paragraph 11. Assistant State's Attorney Larkin indicated that Plaintiff gave consistent statements and that the statement Plaintiff made about the semi-truck striking Ms. Rodriguez was truthful. (Def. Ex. G, A.S.A. Larkin Dep. at 27:7-10; 27:20-23; 62:14-18)

12. The recovered crash data was pulled subject to the search warrant from Plaintiff's vehicle by then Illinois State Trooper Amanda Griffin. (Pl.'s Am. Compl., ¶ 15) (Ex. D-

Dep of A, Griffin at 66-67) (Ex. H-Dep of C. Weinbrenner at 24:4-15)

**Response:** Plaintiff does not dispute paragraph 12.

13. The crash data showed that just prior to striking Mercedes Rodriguez, Plaintiff's gas pedal was pushed to 100%. (Ex. B-Dep of S.A. Sheehan at 84:24-85:9) (Ex. D-Dep of A. Griffin at 66-67), (Ex. H-Dep of C. Weinbrenner at 24:4-15)

**Response:** Plaintiff does not dispute paragraph 13.

14. After reviewing the evidence, Special Agent Sheehan believed Plaintiff was lying when he stated the passing semi-truck struck Mercedes Rodriguez. (Ex. B-Dep of S.A. Sheehan at 82:1-3)

**Response:** Plaintiff objects to paragraph 14. Assistant State's Attorney Larkin indicated that Plaintiff gave consistent statements and that the statement Plaintiff made about the semi-truck striking Ms. Rodriguez was truthful. (Def. Ex. G, A.S.A. Larkin Dep. at 27:7-10; 27:20-23; 62:14-18)

**State's Attorney Review**

15. Special Agent Sheehan contacted Cook County Assistant State's Attorney Michelle Glenn-Sieger who reviewed the evidence and approved felony charges for aggravated battery with great bodily harm. (Ex. B-Dep of S.A. Sheehan at 72:3-10), (Ex. E-Dep of A.S.A.-Glenn-Sieger at 8:20-9:15)

**Response:** Plaintiff does not dispute paragraph 15.

16. ASA Michelle Glenn Sieger spoke with the victim Mercedes Rodriguez and reviewed all the evidence collected by Special Agent Sheehan; she believed all necessary

elements were met to approve charges for aggravated battery with great bodily harm. (Ex. E-Dep of A.S.A.-Glenn-Sieger at 8:20-9:15)

**Response:** Plaintiff objects to paragraph 16. Part of the evidence included the report prepared by Trooper Sterling, who was the first law enforcement official on the scene, and Trooper Sterling conducted a thorough investigation, which included statements, witnesses, video, and his report which was handed over to the investigative unit. (Def. Ex. C, Trooper Sterling Dep. at 57:21-58-6) Trooper Sterling's investigation revealed no evidence of Plaintiff falsifying anything and that there were no facts to support a claim that Plaintiff intentionally used his vehicle to strike Ms. Rodriguez. (Def. Ex. C, Trooper Sterling Dep. at 56:6-9; 62:15-22; 90:17-91:8)

17. Part of this evidence included a statement from Mercedes Rodriguez saying that she heard Plaintiff's engine revving prior to her being struck by his vehicle. (Ex. B-Dep of S.A. Sheehan at 68:15-17), (Ex. F-victim statement video 08:30-08:45) (Ex. E-Dep of A.S.A.-Glenn-Sieger at 9:16-20)

**Response:** Plaintiff objects to paragraph 17. Special Agent Sheehan testified that Ms. Rodriguez heard a "revving noise before she blacked out," without any mention where the revving noise came from. (Def. Ex. B, Special Agent Sheehan Dep. at 68:15-17) Assistant State's Attorney Glenn-Sieger did not mention a "revving engine," as the prosecutor spoke with Ms. Rodriguez about her injuries. (Def. Ex. E, A.S.A. Glenn-Sieger Dep. at 9:16-20)

18. The case was also presented to a grand jury on June 21, 2023, which returned an

indictment for Aggravated Battery pursuant to 720 ILCS 5/12-3.05. (Pl.'s Am. Compl., ¶ 12)

**Response:** Plaintiff does not dispute paragraph 18.

19. On May 9, 2023, Special Agent Sheehan arrested Plaintiff Jose Gamiz for aggravated battery resulting in great bodily harm. (Pl.'s Am. Compl., ¶ 12)

**Response:** Plaintiff does not dispute paragraph 19.

20. Following the approval of felony charges and Plaintiff's arrest, the criminal matter, the *People of Illinois v. Jose Gamiz,* 23CR0705101 was assigned to Assistant State's Attorney Matthew Larkin. (Ex. G-Dep of A.SA. Larkin at 8:14-21)

**Response:** Plaintiff does not dispute paragraph 20.

21. Christopher Weinbrenner was hired by Plaintiff as an expert in the underlying criminal case and was paid 41,225 to prepare a crash report. (Ex. H-Dep of C. Weinbrenner at 18-19)

**Response:** Plaintiff does not dispute paragraph 21.

22. His report supported the finding that Plaintiff pushed the gas pedal to 100 percent prior to striking Mercedes Rodriguez. (Ex. H. Dep of C. Weinbrenner at 24:4-15)

**Response:** Plaintiff does not dispute paragraph 22.

23. His report also opined that the gas pedal was unintentionally pressed just prior to striking Mercedes Rodriguez. (Ex. I. Weinbrenner Report pg. 7 ¶ 4)

**Response:** Plaintiff does not dispute paragraph 23.

24. ASA Larkin filed a motion in limine to limit the findings on intent because it was

a decision for the jury. (Ex. G-Dep of A.SA. Larkin at 13:6-12)

**Response:** Plaintiff does not dispute paragraph 24.

**Nolle Prosequi of Criminal Charges**

25. The criminal case against Plaintiff was dismissed via a nolle prosequi. (Ex. G-Dep of A.SA. Larkin at 33:7-11)

**Response:** Plaintiff does not dispute paragraph 25.

26. The reason for the dismissal was ultimately an issue of timing not due to Plaintiff's innocence. (Ex. G-Dep of A.SA. Larkin at 90:20-91:24)

**Response:** Plaintiff objects to paragraph 26. Assistant State's Attorney Larkin indicated that Plaintiff was charged with aggravated battery with a deadly weapon, aggravated battery on a public way, and aggravated battery causing great bodily injury which was a Class 3 felony with a prison sentence of up to five years. (Def. Ex. G, A.S.A. Larkin Dep. at 8:19-21; 90:7-12) Assistant State's Attorney Larkin indicated that the prosecutors continued to evaluate the evidence, found that Plaintiff gave consistent statements, the black box data showed a depression of the gas pedal and then a depression of the brake pedal, and analyzed the report of Christopher Weinbrenner who analyzed the black box data. (Def. Ex. G, A.S.A. Larkin Dep. at 20: 16-23; 21:18-22:8; 27:7-10) As a result, prosecutors wanted to reduce this to a petty traffic ticket, but understood they could not reduce it down to a traffic violation because of the compulsory joinder doctrine, so all the charges were dismissed under the nolle prosequi motion. (Def. Ex. G, A.S.A. Larkin Dep. at 33:3-10; 51:19-22; 91:5-92-16)

27. At their depositions, Asistant State's Attorney Larkin and Glenn-Sieger both testified that they did not find that Special Agent Sheehan had misrepresented any evidence and did not attempt to pressure them into prosecuting Plaintiff. (Ex, E-Dep of A.S.A.-Glenn-Sieger at 11:1-10) (Ex. G-Dep of A.S.A. Larkin at 13:20-14:12)

**Response:** Plaintiff does not dispute paragraph 27.

28. The only time plaintiff interacted with Special Agent Sheehan was when he was arrested. (Ex. A-Dep of J. Gamiz at 20:34-35)

**Response:** Plaintiff objects to paragraph 28. In addition to arresting Plaintiff, Special Agent Sheehan also called Plaintiff on the telephone and asked Plaintiff to come to the police station to speak with Special Agent Sheehan, but Plaintiff declined to be questioned post-*Miranda* and informed Special Agent Sheehan that he should speak with Plaintiff's attorney. (Def. Ex. B, Special Agent Sheehan Dep. at 68:24-69:1) (Def Ex. A, Gamiz Dep. at 20:4-18)

## LOCAL RULE 56.1(b)(3) STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS

29. Plaintiff Jose Gamiz is not a native or fluent English speaker. Spanish is his primary language. (Def. Ex. A, Gamiz Dep. at 13:22-24, 37:11-25)

30. Mercedes Rodriguez caused and is at fault for the initial two-car collision with Plaintiff's vehicle on March 28, 2023. (Def. Ex. C, Trooper Sterling Dep. at 52:11-53:6)

31. Because of the final resting place of both vehicles following the initial two-car collision, Plaintiff was obstructed from exiting or using the driver's side door of his vehicle. (Def. Ex. A, Gamiz Dep. at 29:23-30:17)

32. This obstruction prevented the vehicle from moving even though it accidently remained in "drive" and not in "park." (*Id.,* Def. Ex. J, Weinbrenner analysis report at page 5; Pl. Exhibit 1 Trooper Sterling Field Report at 5)

33. Plaintiff never attempted to flee from or allude the scene at any time following the initial first or the second collision causing bodily injuries. (Def. Ex. C, Trooper Sterling Dep. at 35:20-25; Def. Ex. A, Gamiz Dep. at 11:13; Def. Ex. B, Special Agent Sheehan Dep. at 41:20-42:6)

34. Mercedes Rodriguez, while standing in the middle of the interstate and facing Plaintiff's vehicle, was confrontational, aggressively yelling at Plaintiff and blaming him for the collision, and demanding that he exit his vehicle so she could confront him about the collision. (Def. Ex. A, Gamiz Dep. at 42:17-24)

35. Mercedes Rodriguez' decision to exit her vehicle and walk towards and place herself in front of Plaintiff's vehicle in the manner she did was inherently dangerous and put her at risk and in harm's way. (Def. Ex. C, Trooper Sterling Dep. at 48:10-14; Def. Ex. B, Special Agent Sheehan Dep. at 40:25-41:1)

36. In an honest attempt to comply with Mercedes Rodriguez' commands and demands, Plaintiff looked down and unbuckled his seat belt in an attempt to move from the driver's seat of the vehicle, climb over the center console, and across to the passenger side where he would be able to exit the vehicle and comply with Ms. Rodriguez. (Def. Ex. A, Gamiz Dep. at 14:8-18, 44:17-45:7)

37. In the process of doing so, but unknown to Plaintiff at the time, the vehicle inched

forwards as a result of his feet accidently touching or pressing the gas and then immediately the brake for a miniscule of a second each, because the car was not in park following the confusion of the initial two-car collision. (Def. Ex. A, Gamiz, Dep. at 14:12-18).

38. Plaintiff remained on the scene and cooperated, answering all questions to Trooper Sterling honestly and truthfully to the very best of his ability. (Def. Ex. C, Trooper Sterling Dep. at 36:6, 61:16-64:18; Def. Ex. A, Gamiz Dep. at 13:18-21)

39. Plaintiff exhibited no aggression or hostility at any time or to anyone following the vehicle collisions. (Def. Ex. C, Trooper Sterling Dep. at 64:19-25; Def. Ex. A., Gamiz Dep. at 42:11-13, 42:25-43:1); Def. Ex. B, Special Agent Sheehan Dep. at 41:20-42:6)

40. Trooper Howard Sterling, as the first main responding law enforcement officer, conducted an extensive and immediate investigation, including interviews on scene with Plaintiff and other witnesses, with Ms. Rodriguez in the hospital, as well as viewing camera footage showing the forward movement of Plaintiff's vehicle that led to Mercedes Rodriguez' injuries as captured by a passing semi-truck's rearview mirror. (Def. Ex. C, Trooper Sterling Dep. at 56:6-10, 90:17-91:8)

41. Mercedes Rodriguez claims that she needed to stand in front of Plaintiff's vehicle to prevent him from leaving and attempt to flee the scene were discredited by the results of Trooper Sterling and Special Agent Sheehan's investigation, who never believed Plaintiff tried to flee. (Def. Ex. C, Trooper Sterling Dep. at 35:20-25; Def. Ex. B, Special Agent Sheehan Dep. at 41:20-42:6; Def. Ex. A, Gamiz Dep. at 42:11-13)

42. Plaintiff spoke by phone a second time with Trooper Sterling shortly after the incidents, and was asked about significant topics related to the collision causing Ms. Rodriguez bodily injuries. Plaintiff never denied, but stated that he was "not sure" whether the vehicle was in park after the first accident, "not sure" whether he had his foot on the brake while he was in the vehicle after the first accident, that he was "not sure but (that his) vehicle might have" driven forwards and that he was looking down trying to get out of his seatbelt. (Pl. Ex. 1, Trooper Sterling Field Report at 5)

43. Following his extensive investigation, Trooper Sterling believed and ultimately concluded that the cause of Mercedes Rodriguez' injuries was an accident and prepared paperwork consistent with it being an accident. (Def. Ex. C, Trooper Sterling Dep. at 56:6-10, 90:17-91:8)

44. Special Agent Sheehan was eventually assigned the case through the administrative process, to conduct any necessary follow up investigation, which included obtaining and executing a search warrant for the crash data box from Plaintiff's vehicle. (Def. Ex. B, Special Agent Sheehan Dep. at 21:25-22:4)

45. Analysis of crash data can interpret, analyze, explain, reconstruct, and lead to formal informed conclusions regarding the "behavior of the driver" who operates a vehicle involved in a collision, including how long a gas or brake pedal is depressed (pushed down) and whether an incident is indicative of an accident or intentional act. (Def, Ex. D, Trooper Griffin Dep. at 34:15, 45:1-8, 84:22-85:5, 72:9-73:9, 77:6-21)

46. Analysis of crash data, along with other available evidence, can assist in

determining whether an incident is indicative of an accidental or intentional act. (Def. Ex. H, Weinbrenner Dep. at 26:12-28:7)

47. The crash data was extracted/downloaded following the judicial execution of a search warrant. (Pl. Ex. 2, Attached Exhibit, search warrant for plaintiff's vehicle black box data)

48. Trooper Griffin, as a trained and certified accident reconstruction specialist with Illinois State Police was assigned part of the investigation, and extracted and downloaded the crash data from Plaintiff's vehicle, and offered to conduct an analysis of what the data showed. (Def. Ex. D, Trooper Griffin Dep. at 36:6)

49. In email dated May 8, 2023, Special Agent Sheehan sought Trooper Griffin's assistance in "deciphering the data" from the crash data box of Plaintiff's vehicle. (Attached email correspondence)

50. Trooper Griffin replied via email dated May 9, 2023, and asked whether the data would be used for legal purposes in a court of law, which would help determine if a formal analysis of the data should occur, in order to glean evidence of "driver behavior." (*Id.)*

51. Trooper Griffin also made clear that without any analysis conducted, the data would be unofficial and insufficient for legal court testimonial purposes were she needed to testify in this matter. (*Id.*)

52. Despite Trooper Griffin's attempt to conduct a full, formal analysis of the crash data, including explaining the importance of doing so, (for legal court testimonial

purposes) this offer was declined and refused by Special Agent Sheehan. (*Id.*; Def. Ex. D, Trooper Griffin Dep. at 75:13-21)

53. Special Agent Sheehan never consulted with or spoke to Trooper Sterling at any time during Special Agent Sheehan's investigation, including about Trooper Sterling's own investigation immediately following the incidents. (Def. Ex. C, Trooper Sterling Dep. at 16)

54. Special Agent Sheehan had no training or experience in interpreting or analyzing vehicular crash data. (Def. Ex. D, Trooper Griffin Dep at 75:5; Def. Ex. B, Special Agent Sheehan Dep. at 47:8-48:9)

55. Christopher Weinbrenner, as hired by Plaintiff (then a criminal defendant), conducted an analysis of the crash data and found that the gas pedal was depressed (pressed down) for only .8 seconds, and the brake pedal immediately after for .6 seconds. Because of vehicle latency, which is the delay in communication between the application of the gas or brake pedal and the physical reaction of the vehicle to this application, as the vehicle began to move (perception occurs), the accelerator pedal was immediately released (reaction to when the perception occurred). In the absence of any (other) evidence pointing to intent, that the reason for the vehicle's forward movement that caused Ms. Rodriguez injuries was an accident, and Christopher Weinbrenner so concluded to a reasonable degree of scientific certainty. (Def. Ex. I, Weinbrenner Report at page 7; Def. Ex. H., Weinbrenner Dep. at 26:22-28:7; 60:18-61:23)

56. This analysis report was tendered in discovery to the Cook County State's

Attorney's office. (Def. Ex. G, ASA Larkin Dep. at 11:2-5)

57. ASA Michele Glenn-Sieger believed sufficient evidence existed to approve charges because of the investigatory information provided by her by Special Agent Sheehan. (Def. Ex. B, Special Agent Sheehan Dep. at 57:20-25)

58. The Cook County State's Attorney's office never sought additional crash analysis or investigation of their own in 23CR0705101 from anyone including by Trooper Griffin, the collision specialist who had already done work on the matter by extracting the data after the search warrant. (Def. Ex., G, ASA Larkin Dep. at 77:4-14)

59. The evidence in 23CR0705101 was deemed by prosecutors as eventually no longer supported continuing the prosecution, and was fully and voluntarily dismissed by the Cook County State's Attorney. (Def. Ex. G, ASA Larkin Dep. at 20:20-21:24)

Respectfully submitted,

/s/ Jonathan D. Feldman
Jonathan D. Feldman
Attorney for Jose Gamiz

Jonathan D. Feldman
70 E. Lake Street
Suite 910
Chicago, IL 60601
312-952-5172
Email: jdfeldmanlaw@gmail.com